WILLIAM FOERSTER & COMPANY v. FAULK-CHRISTIAN
LUMBER COMPANY.

[56 South. 162.]

CONTRACTS OF SALE. Stipulations. Waiver.

Where in a contract for the sale of lumber to a buyer employed in ex-
porting lumber, there was a provision that "shipments to the buyer
should be made as steamer room for desired ports becomes available."
*Held*, that this provision was for the benefit of the buyer and could
be waived by him, and where so waived the seller was not excused
from delivering the lumber by showing that the buyer had not ad-
vised him that steamer room had been obtained.

APPEAL from the circuit court of Greene county.
HON. JOHN L. BUCKLEY, Judge.

The facts are sufficiently stated in the opinion of the
court.

*Rich & Hamilton*, for appellants.

It was contended below that the phrase in the con-
tract, "shipment to be made as steamer room for the
desired ports becomes available" was a condition prece-
dent and that the evidence did not show that such a
condition had ever existed, or that any of the demands
upon the defendant had ever showed such a condition,
and that there was no duty on defendant's part to de-
liver except upon the existence of such condition.

The reply to this is obvious. The immediately follow-
ing sentence provides: "Terms of payment net cash,
eighty per cent of the value of each monthly production
to be paid on the first of each month by sight draft on
us. You are to attach to the draft specifications show-
ing the amount of each monthly production against which
the above stated advance is made, the remaining twenty
per cent we are to pay at time of shipment."

Therefore, it could not be for the benefit of the defendant as twenty per cent of its production was not to be paid for until shipment was made, and of course the sooner the shipment was made the sooner would the defendant get this twenty per cent, the result being that, instead of being a condition precedent for its advantage, it was really to its disadvantage. It was manifestly intended for the benefit of the buyer, who by not being required to immediately order the monthly production of defendant, and having the privilege of waiting until shipping room became available, would be saved the expense of storage and unnecessary handling at Mobile.

This is obvious, but a somewhat similar case may be mentioned, being *Neill* v. *Whitford,* 18 Com. Bench (N. S.) 435, where there was a sale of cotton, the phrase in the contract being, ''the cotton should be taken from the quay;'' it was contended by the buyer, who therefore refused to accept the goods, that it was a condition precedent; but the court held, that it was a stipulation for the benefit of the seller only and to prevent his having to pay charges, and it was not a condition precedent. This case was affirmed in the Exchequer Chamber (1 Com. Pl. [L. R.] 685).

A similar principle was announced in *Harrison* v. *Fortlage,* 161 U. S. 57, top of page 64, where a provision was held not a condition of the contract, but merely a provision for the benefit of the seller.

Furthermore, it is to be noted that, where any doubt is possible the construction by the parties controls (*Ramsey* v. *Brown,* 77 Miss. 124), and the construction here was that at no time was any such question raised, the question would seem therefore to be foreclosed entirely.

Furthermore, whether for the benefit of the plaintiffs as buyers or not, it is certain, under the authorities, that no indefiniteness as to time of delivery, so as to affect the contract, existed. The law is thoroughly settled, that such a provision cannot postpone the performance of the

contract indefinitely, but that the law itself implies the limitation that it shall be reasonable, which implication is based upon the manifest intent of the parties. For instance: In the case at bar, where the plaintiffs were to pay eighty per cent of the preceding monthly production, they certainly expected not to lose the goods upon which they had advanced this money; on the other hand, the defendant, as seller, certainly did not expect to lose the balance of twenty per cent due him therefor; nor could he reasonably expect to hold the eighty per cent payment and also the goods. Manifestly they intended that such deliveries should be made at some time, and, although a reasonable margin was allowed for the convenience of one or the other (we insist for the buyer), yet there was intended a limit, which would be whatever was a reasonable time under the circumstances.

The law is well stated in the leading case in 19 Wall., p. 560, 562, where the provision was for payment "as soon as the crop can be sold, or the money raised from any other source." The court says:

"No time having been specified within which the crop should be sold, or the money raised otherwise, the law annexed as an incident that one of the other should be done within a reasonable time, and that the sum admitted to be due should be paid accordingly. Payment was not conditional to the extent of depending wholly and finally upon the alternative mentioned. The stipulation secured to the defendants a reasonable amount of time in which to procure in one mode or another the means necessary to meet the liability. Upon the occurrence of either of the events named, or the lapse of such time, the debt became due, it could not have been the intention of the parties that, if the crop were destroyed, or from any other cause could never be sold, and the defendants could not procure the money from any other source, the debt should never be paid. Such result would be a mockery of justice."

This case was followed in this state in the case of *Randall* v. *Johnson,* 59 Miss. 317, where money was to be paid ninety days after schooner's first return trip; she was lost at sea, and it has held, quoting the last sentence of the preceding case, that a contrary holding would be a "mockery of justice," that her return was not an absolute condition precedent, and that the money was due ninety days after the expiration of the period required for her return trip.

In the note to this Mississippi case, as reported in 42 American Reports 365, a number of cases are cited and commented upon, the result reached by the annotator being that it is clear that a payment at all hazards is to be made within a reasonable time.

In Alabama, in *Byrne Mill Co.* v. *Robertson,* 149 Ala. 273, where payment was to be made as the lumber was loaded on cars at Mobile, it was held that the time of payment was not indefinite, that it was for the benefit of the plaintiff, and if not, yet in any event that the law implied a reasonable time.

Similarly, in *Culver* v. *Caldwell,* Admr., 137 Ala. 125, 132, where the contract was for the defendant to "refund as fast as he could spare from his salary," the court held, that the contract was not void for uncertainty, that what was meant was merely that he had a reasonable time to acquire money from the expected source and that he was not relieved of the obligation in case he found it inconvenient to spare it; and it was held valid accordingly.

To the same effect is *Hicks* v. *Shower,* 3 B. Mon. 483, where the provision was to pay as soon as a house could be sold.

In *Crass* v. *Scruggs & Co.,* 115 Ala. 264, a similar doctrine as to reasonable time was announced.

In *Lewis* v. *Tipton,* 10 Ohio State 88, paper payable "when I can make it convenient," it was held due after reasonable time.

In *Noyes* v. *Barnard*, 63 Fed. 782, the circuit court of appeals for the ninth circuit held that a commission payable on a basis of sales of land, the time when and terms of which were to be in defendant's hands, the law implied a reasonable time.

In *Hood* v. *Hampton, etc., Co.*, 106 Fed. 408, the same doctrine was announced.

So in *Smithers* v. *Junker*, 41 Fed. 101, a note contained the promise to pay two thousand and forty-eight and no one-hundredths dollars "payable at my convenience and upon this condition, that I am to be the sole judge of such convenience and time of payment;" held that, nevertheless, it was due after a reasonable time.

Among the above authorities will be found cited by the court other cases.

A case directly in point is that of *Whiting* v. *Gray*, 8 So. 726, 27 Fla. 488, which was a case where the defendant was to deliver the lumber, commencing July 10th, or as soon thereafter as a vessel can be ready, and the suit was by the buyer for failure on the part of the seller to deliver, and the seller by plea set up that "no time was fixed in the contract for chartering a vessel to transport the lumber to be delivered by the defendant; that the plaintiff was bound by the contract to charter a vessel in a reasonable time, which plaintiff did not do," and adds further, that the defendant cut the lumber according to contract and was ready and offered to deliver it, but the plaintiff would not receive it within a reasonable time. This plea was demurred to and the court below overruled the demurrer. The contention of the plaintiff's counsel was, that although when time for performance is not specified, the law implies a reasonable time, yet that the parties in that case had fixed the time without reference to reasonableness. The supreme court, however, held, to the contrary, per Raney, C. J., saying:

"The obligation of the plaintiff was to have a vessel ready as soon as he could, and it was understood by the parties he had to charter her; and this means nothing more than that, as he did not then have a vessel, he was still to have her ready within such time as would be a reasonable time for chartering one and getting her ready to receive the cargo; or, in other words, to have her ready in what, under the circumstances, or considering that the plaintiff had to charter one, would be a reasonable time," and the judgment was affirmed accordingly.

This case, we submit, shows conclusively that applying the principle to the case at bar, the meaning of the phrase, "shipments to be made as steamer room for the desired ports becomes available," did not mean an indefinite or uncertain length of time, but it meant that such shipments were to be made within a reasonable time, and that the duty was on the plaintiff to secure within a reasonable time available steamer room, failing which, at the expiration of such reasonable time, there would be a violation of the contract, of which the defendant, or seller, could avail himself by suit, or otherwise, as the case might be.

Of consequence, we submit that uniformly under the authorities, this provision in the contract under discussion was not an indefinite and void provision, but was a very definite and certain provision, which would in the proper contingency, if breached by plaintiffs, constitute a ground of action by the defendant.

*Gex & Harrison,* for appellees.

An inspection of the contract will show the following facts:

The appellee was the owner of a small sawmill in Green county, Mississippi, and as such manufacturers of the grades of lumber as set out in the letter in the pleadings which forms the basis of the contract. That the appel-

lants were what are known as export brokers, whose chief occupation is to buy lumber in this country and make sales thereof in foreign countries, they were not shippers in the general acceptance of that term, but they purchase ''room'' or space on outgoing vessels for the shipment of whatever lumber they could purchase from time to time when room is available and transportation rates such as to allow a profit on the shipment.

The parties being fully aware of the conditions and circumstances surrounding both of them entered into the contract, which as we view it, if any other results could be reached, but those found by the lower court, was purely a gambling contract on the part of the appellant with the usual terms of such contracts as far as the appellant was concerned of ''heads I win, tails you lose.''

The appellant had ample protection against loss, and by the provisions of the contract, if the appellee failed to make deliveries at the time it had a right to demand such deliveries, to-wit:

''As steamer room for the desired points became available'' and if at that time the appellee had not made deliveries, then the appellant could have purchased the lumber provided by the contract for account of appellee and charged appellee with the difference between the contract price and the price he would have paid for same on the market; but it had no greater rights and if no steamer room became available, as it is clearly shown by implication from the evidence, then the appellants were not damaged and cannot recover, the lumber having been bought for a specific purpose to permit it, the appellant, to charge the appellee the difference between the market price (at an arbitrary time) and the contract price, though it is shown it never sustained any loss, is to us manifestly unfair, and is not supported by any principle of law that we know of.

The appellee was to sell to appellant a certain amount of lumber as it manufactured same; the appellant was

to purchase that lumber for the specific purpose of export "as steamer room was available." Steamer room to this date not having become available, appellant has sustained no damages, no more so than could the appellee if the market had gone down sued for the difference between the contract price and the market price, though he had never manufactured a foot of the lumber. His was not a contract for the sale of futures in lumber, but for actual delivery of the goods to appellants "when he could obtain shipping room on vessels," and it never having obtained shipping room, it was not damaged.

We do not dispute appellant's law, because it is not applicable to the real issue on which the peremptory instruction was granted.

Smith, J., delivered the opinion of the court.

Appellants are engaged in the lumber export business in the city of Mobile, Alabama, and appellee owns and operates a sawmill at Leakesville, Miss. On October 13, 1904, a contract for the purchase of lumber by appellant from appellee was entered into by them; it being in the form of a letter addressed by appellants to appellee and by appellee accepted. This contract, among other things, contains the following stipulation: "Shipments to be made as steamer room for the desired ports becomes available." All of the lumber purchased by appellants under the contract not having been delivered, suit was instituted against appellee for the recovery of the damages alleged to have been sustained by appelllants by reason thereof. The evidence introduced on behalf of appellants was excluded by the court, and a verdict directed for appellee. It is contended here by counsel for appellee that appellee was under no obligation to make any shipment of lumber until it had been advised that appellants had obtained steamer room for same, that no such advice was ever given to appellee, and consequently appellee was never placed in default. This provision of

the contract was for the benefit of appellants, which, of course, could be, and under the evidence was, waived by them.

The judgment of the court below is therefore reversed, and the cause remanded.    *Reversed and remanded.*